# Illinois Official Reports

## Appellate Court

---

*Talamine v. Apartment Finders, Inc.*, 2013 IL App (1st) 121201

---

| | |
|---|---|
| Appellate Court Caption | ROBERT TALAMINE, Plaintiff-Appellant, v. APARTMENT FINDERS, INC., and JUSTIN ELLIOTT and JOHN McGEOWN, Individually and as Agents of Apartment Finders, Inc., Defendants-Appellees (Kent D. Sinson, Respondent to Rule to Show Cause). |
| District & No. | First District, Third Division<br>Docket No. 1-12-1201 |
| Filed | November 19, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although the appellate court elected not to impose any sanctions on plaintiff's counsel for the intemperate filings he submitted to the court, the court indicated that its belief in the sincerity of the apology he submitted later would be determined by counsel's future conduct. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-L-7270; the Hon. William H. Taylor II, Judge, presiding. |
| Judgment | Rule to show cause is dismissed. No sanctions imposed. |

| Counsel on Appeal | Sinson Law Group (Kent D. Sinson, of counsel), and Joanna C. Fryer, both of Chicago, for appellant. |
| | |
| | SmithAmundsen LLC, of Chicago (Michael Resis and Ryan B. Jacobson, of counsel), for appellees. |
| | |
| | Collins Bargione & Vuckovich, of Chicago (George B. Collins, of counsel), for respondent. |
| | |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion. Justice Neville concurred in the judgment and opinion. Justice Hyman specially concurred, with opinion. |

## OPINION

¶ 1     Two intemperate submissions filed in this court caused us to issue an order to show cause why sanctions should not be imposed on the attorney who prepared and filed them. The timely filed response contained an apology to the court; however, the response indicates a lack of appreciation of the harm inflicted on the judicial system by incivility and unprofessional conduct. We review what occurred as a reminder to all attorneys and litigants of the necessity of civility and professionalism in all aspects of litigation, including appellate advocacy.

¶ 2     Respondent, attorney Kent D. Sinson, on behalf of Mr. Talamine filed a multicount complaint in the circuit court of Cook County that included claims alleging malicious prosecution and false imprisonment. The circuit court granted summary judgment in favor of defendants on these two counts and further ordered that plaintiff would be barred from seeking punitive damages on the remaining counts. Plaintiff dismissed the remaining counts and filed an appeal of the summary judgment ruling. In the interim, the trial judge was appointed by our Supreme Court to the position of Appellate Court Justice of the First Judicial District. After full briefing, and without oral argument, we affirmed the grant of summary judgment by the trial court and declined to address the interlocutory order regarding punitive damages in an unpublished order pursuant to Rule 23 (Ill. S. Ct. R. 23 (eff. July 1, 2011)). *Talamine v. Apartment Finders, Inc.*, 2013 IL App (1st) 121201-U.

¶ 3     Our order was filed pursuant to Rule 23. This rule generally provides that appeals may be disposed of by written opinion, written order or by written summary order. The rule further directs this court that a case may be disposed of by an opinion "only when a majority of the panel deciding the case determines that at least one of the following criteria is satisfied: (1)

the decision establishes a new rule of law or modifies, explains or criticizes an existing rule of law; or (2) the decision resolves, creates, or avoids an apparent conflict of authority within the Appellate Court." Ill. S. Ct. R. 23 (eff. July 1, 2011). A Rule 23 order is not precedential and may be cited only "to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case." *Id*.

¶ 4 Respondent thereafter filed a motion to publish this order and concurrently filed a petition for rehearing. After a review of the motion and petition, respondent was ordered to file a response and show cause why sanctions should not be imposed pursuant to Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994) (A reviewing court may impose a sanction upon a party or an attorney for a party on the reviewing court's own initiative where the court deems it appropriate. If the reviewing court initiates the sanction, it shall require the party or attorney, or both, to show cause why such a sanction should not be imposed before imposing the sanction.). Respondent timely filed his response.

¶ 5 The motion to publish and the petition for rehearing were signed, certified and filed by respondent, a licensed attorney in this state. Contained in these filings were the following statements: that an "opinion [*sic*] issued without oral argument and filed pursuant to Rule 23(b) does not suggest 'openness' "; that "petitions for rehearing never get granted [and] it seems doubtful that any members of the reviewing court even read the petitions for rehearing"; that Sinson is "troubled" because this court was reviewing "the decision of a fellow member of the [appellate court]" which, "for [t]hat reason alone suggests a possible need for recusal"; and that this court "completely" misstated "the facts by omitting facts it finds inconvenient" and issued this order knowing "its recitation of the facts is a gross distortion of the record and a gross distortion of the Plaintiff's arguments" done because "[p]erhaps this Court felt it was more important to maintain a friendly relationship with their colleague down the hallway than it was to do justice in a case that did not personally involve them." Mr. Sinson also accused this court of "dishonest assumptions," "hypocrisy," "making false and misleading" statements, and asserted this court is not "serious about following the law."

¶ 6 In the response filed by counsel for Mr. Sinson, and signed by Mr. Sinson, respondent explains that the facts of the underlying case were such that he "expected to present a case" but was ruled against in the trial court and in this court and he "believed his treatment unfair" and he "exploded, on paper." He advises us that an "[O]pinion [*sic*] under Rule 23(e)(1) is discretionary, and no inference adverse to the Court arises from 'Rule 23' "; the "implication that members of the Panel did not read the Petition for Rehearing is wrong"; his complaint that the "Court 'misstated' the facts" was based on his belief that the facts as he knew them created a case but they did not "because the Court did not agree with [his] view of the law. Such is the bad luck of a lawyer–but it does not give a right to the criticism made"; and he "particularly regrets that he wrote that 'it was more important to maintain a friendly relationship with their colleague down the hallway' than to do justice." Respondent proceeds to apologize to the court and the trial judge and affirms he does not believe the trial judge would or could communicate with this court about his trial court rulings and that a lawyer cannot criticize this court "for being part of the larger Court, which includes a trial judge who

is having his opinions subject to review." Respondent asserts he is "chastened and humiliated." Respondent continues to assert that the balance of his statements were wrong and that a Rule 23 order does not mean this court has "not paid attention to the case"; that "there is no hypocrisy to the judicial lack of favor given to malicious prosecution cases"; and that "doctrine did not originate with this Panel"; finally, he apologizes that he said "the Court was not serious about following the law."

¶ 7 Respondent concludes by acknowledging his petition lacks civility and he apologizes to the court for "the intemperate, incorrect, and wrong statements." He claims his apology is "heartfelt and sincere."

¶ 8 However, respondent disagrees that his petition for rehearing brings the court into disrepute because "it is a cry from the heart of a disappointed advocate; and–considering the source–it will not destroy public confidence in the integrity of the Court."

¶ 9 We completely disagree. The documents filed in this court, signed and certified by respondent, contain language reasonably viewed as disrespectful to the court; they contain unjust criticism and insulting language and ascribe offensive conduct on the part of judges of this court. In our judgment, these filings by Mr. Sinson, an officer of the court, tend to bring the court and the law into disrepute and tend to destroy public confidence in their integrity. Our supreme court in *People ex rel. Chicago Bar Ass'n v. Metzen*, 291 Ill. 55, 58 (1919), observed:

> "Judges are not exempt from just criticism, and whenever there is proper ground for serious complaint against a judge it is the right and duty of a lawyer to submit his grievances to the proper authorities, but the public interest and the administration of the law demand that the courts should have the confidence and respect of the people. Unjust criticism, insulting language and offensive conduct toward the judges, personally, by attorneys, who are officers of the court, which tend to bring the courts and the law into disrepute and to destroy public confidence in their integrity, cannot be permitted."

¶ 10 Respondent's statements lack civility and are not in compliance with an attorney's responsibilities under the Illinois Rules of Professional Conduct of 2010. Counsel's petition violates basic tenets of professional conduct: disrespect for the legal system and those who serve it ("A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials." Ill. R. Prof. Conduct (2010), Preamble); it erodes the public's understanding of and confidence in the rule of law and the justice system ("[A] lawyer should further the public's understanding of and confidence in the rule of law and the justice system because legal institutions in a constitutional democracy depend on popular participation and support to maintain their authority." Ill. R. Prof. Conduct (2010), Preamble); and it demonstrates a failure to maintain a professional, courteous and civil attitude toward all persons involved in the legal system ("These principles include the lawyer's obligation zealously to protect and pursue a client's legitimate interests, within the bounds of the law, while maintaining a professional, courteous and civil attitude toward all persons involved in the legal system." Ill. R. Prof. Conduct (2010), Preamble).

- 4 -

¶ 11    The practice of law is a stressful profession. Practitioners frequently become frustrated and perhaps exasperated. However, frustration and exasperation do not justify or excuse respondent's conduct or, for that matter, similar conduct of any attorney before any court. Counsel's resort to invective rather than civil, cogent, intelligible and intelligent argument in support of his position does nothing to encourage understanding of his client's position. This conduct impedes constructive discourse and reduces the unsuccessful attorney to the equivalent of a child pouting in the corner when he does not get his way. While this insulting language may impress his client in a manner more suited for talk radio, it has absolutely no place in a judicial setting as it does nothing to serve the interest of justice and it promotes disrespect for the independence and impartiality of the judiciary. This filing does nothing to advance respect for the court or for the civil justice system. In short, it demonstrates a serious lack of civility and professionalism that simply cannot be countenanced.

¶ 12    That stated, we extend to counsel the civility our judicial system expects, the measure of which he initially failed to extend to the court, and accept his apology. We elect not to impose any sanction. Our forbearance in this regard, though, should not be mistaken as precedent when the next instance of incivility presents itself. Appellate and trial judges deplore incivility, as should every lawyer and litigant. We believe Mr. Sinson's apology to be sincere, but that will be determined by how he conducts himself in the future.

¶ 13    Rule to show cause is dismissed. No sanctions imposed.

¶ 14    JUSTICE HYMAN, specially concurring.

¶ 15    I write to emphasize that lawyers greatly influence their clients' impressions of the judicial process. Because clients tend to believe what their lawyers tell them, ultimately, client impressions affect public perception, and today the public generally perceives the judicial process with suspicion.

¶ 16    While attorney Kent D. Sinson characterized this incident as his way of letting off steam, his filings strongly suggest that the judicial process was tainted. But, according to Sinson's *mea culpa* response to our show cause order, we should not fret. Why? According to Sinson, "considering the source [Sinson]," his ill-tempered filings "will not destroy public confidence in the integrity of the court." Sinson, who was admitted to the Illinois Bar in 1987, belittles himself too easily.

¶ 17    Every ad hominem smear, insult, and innuendo, every speculative accusation, every potshot leveled at members of the judiciary has the capacity of weakening confidence in the judiciary as a whole, confidence which is essential to the vitality of our legal system. Sinson misses this point. At the very least, he should have realized that his client's faith in the legitimacy of the decision has been jeopardized.

¶ 18    Of course lawyers disappointed with a decision sometimes lash out at the messenger (read, the judge) of the bad news. But what is overlooked, as it was by Sinson, is that every personal attack on the impartiality and integrity of judges diminishes the client's (and the public's) already limited trust in the fairness of the legal system. Until lawyers restrain their

bashing of judges, the public's confidence in the judicial process will remain fragile. I urge lawyers to think twice before slamming the decision-makers instead of their decisions.