# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380

---

| | |
|---|---|
| Appellate Court Caption | PARKWAY BANK AND TRUST COMPANY, Plaintiff-Appellee, v. VICTOR KORZEN and TOMAS ZANZOLA, Defendants-Appellants (Unknown Owners and Nonrecord Claimants, Defendants). |
| District & No. | First District, First Division<br>Docket No. 1-13-0380 |
| Opinion filed<br>Supplemental opinion<br>filed<br>Rehearing denied | September 23, 2013<br><br>December 16, 2013<br>January 15, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a groundless appeal from a foreclosure proceeding involving frivolous and confusing pleadings and procedures by defendants with respect to their vacant lot, the appellate court affirmed the judgment for plaintiff, recognized plaintiff's right to petition for attorney fees, and directed defendants to show cause why a fine of $10,000 should not be imposed on them pursuant to Supreme Court Rule 375. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-36598; the Hon. Robert Senechalle, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal    Victor Korzen and Tomas Zanzola, both of Chicago, appellants *pro se*.

Scott & Kraus, of Chicago (Eugene S. Kraus and Sonia S. Kinra, of counsel), for appellee.

Panel    JUSTICE DELORT delivered the judgment of the court, with opinion.

Presiding Justice Connors and Justice Cunningham concurred in the judgment and opinion.

## OPINION

¶ 1    This appeal of a mortgage foreclosure case involving an empty lot is so groundless that we would normally dispose of it with a brief summary order. However, it provides us an opportunity to review a number of tactics a small number of debtors use both to delay the ultimate resolution of cases against them and to use the legal system for improper purposes. Some people might classify those who engage in these tactics as "sovereign citizens," but regardless of the nomenclature, their methods are not only counterproductive, but detrimental to the efficient and fair administration of justice. A recent New York Times article noted the FBI has labeled the strategy as " 'paper terrorism.' " Erica Goode, *In Paper War, Floor of Liens Is the Weapon*, N.Y. Times, Aug. 23, 2013, at A1.

¶ 2    Because of the growing number of these cases, we issue this opinion to provide guidance to the many courts confronted with similar matters.[1] We affirm the judgment below and retain jurisdiction to award additional attorney fees as provided by the underlying contract and to consider the imposition of sanctions under Illinois Supreme Court Rule 375 (Ill. S. Ct. R. 375 (eff. Feb. 1, 1994)).

¶ 3                                  BACKGROUND

¶ 4    Defendants-appellants, Victor Korzen and Tomas Zanzola, who are the owners of the subject property, raise no less than 15 points in their *pro se* appeal. Establishing a framework to properly analyze these contentions requires us to set out the chronology of the case in unusually excruciating detail, as follows.

---

[1]"Precisely because the substantive claims are so weak, and the opinions are therefore unpublished, litigants may be unaware of our practice. The routine use of sanctions does not deter unless people know what lies in store." *Coleman v. Commissioner of Internal Revenue*, 791 F.2d 68, 72 (7th Cir. 1986).

¶ 5

| Date | Event |
|---|---|
| January 5, 2007 | Defendant Zanzola signs a promissory note to borrow $100,000 from Parkway Bank & Trust Company (Parkway). The note matures six months later, on July 5, 2007. The note provides that Zanzola will be responsible to pay Parkway's attorney fees, court costs, and expenses, including for appeals, if Zanzola fails to repay the note on time. The note states that it is secured by a January 5, 2007 mortgage, assignment of rents, and "commercial security agreement" between Zanzola and defendant Korzen for property located at 1527 East Thomas Street in Palatine (the property). The note was thereafter renewed in like form for six successive six-month terms, the last terminating on July 5, 2010. |
| January 5, 2007 | Zanzola and Korzen sign a mortgage on the Thomas Street property with Parkway. The mortgage contains a standard "due on sale" clause providing that Parkway may declare the note immediately due and payable if the mortgagors transfer any of their interest in the property. The mortgage also provides that if the note is not paid on time, Parkway may obtain a court order foreclosing the mortgagors' interest in the property. Like the note, the mortgage provides that the mortgagors shall pay Parkway's "reasonable" attorney fees and court costs "at trial and upon any appeal." <br><br> In the mortgage, Zanzola and Korzen waived their rights of redemption and reinstatement in case of a foreclosure, a waiver which is only valid if the property is not "residential" as defined by the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1101 *et seq.* (West 2010)). Under the Foreclosure Law, the property is only "residential" if the borrower actually lives in a residence constructed on the property. 735 ILCS 5/15-1219 (West 2010). |
| January 5, 2007 | Zanzola and Korzen sign an assignment of rents in favor of Parkway, another act which suggests that the property is not "residential" under section 15-1219 of the Foreclosure Law. |

-3-

| | |
|---|---|
| January 22, 2007 | Korzen signs and records a deed quitclaiming his interest in the property to himself and Zanzola as joint tenants. Korzen signs a certificate with the deed asserting that the transaction between Zanzola and him is exempt from real estate transfer taxes. |
| August 26, 2010 | Parkway files this mortgage foreclosure lawsuit, along with a civil cover sheet indicating that the property is "vacant land." The lawsuit names both Korzen and Zanzola as defendants.<br><br>The lawsuit contains two counts. Count I seeks a mortgage foreclosure and follows the standard statutory format. Parkway attached three exhibits to the complaint to support its allegations in count I: (a) a copy of the January 5, 2007 promissory note, whose most recent renewal matured on July 5, 2010; (b) a copy of the January 5, 2007 mortgage; and (c) a copy of the January 5, 2007 assignment of rents. Count I, paragraph 3, alleges that the default on the note and mortgage occurred through failure to pay amounts due under the note on and after March 8, 2010, and that the amount currently due is about $106,377.23 plus continuing per diem interest of $28.39.<br><br>Count II is a claim for breach of the promissory note against Zanzola. |
| September 1, 2010 | The circuit court appoints a special process server to serve defendants. |
| September 12, 2010 | The special process server personally serves Zanzola at an address in Prairie Grove, McHenry County, Illinois. |
| September 14, 2010 | The Cook County sheriff's deputy assigned to serve defendants reports that he could not serve Korzen at 410 South Warner in Palatine, because he moved from that address "five years ago." |
| October 20, 2010 | Both defendants file motions in the circuit court to defend as poor persons without paying filing fees. The court grants the motions. |

| | |
|---|---|
| October 28, 2010 | Zanzola files an appearance, listing his Prairie Grove address; Korzen also files an appearance, listing an address in Chicago. The two defendants jointly file a fill-in-the-blank form answer, denying the allegations of count I, paragraph 3, of the complaint, and claiming that they have insufficient knowledge to admit or deny count I, paragraph 2.<br><br>Under the portion of the answer labeled "Other affirmative matter," defendants state the following:<br><br>"Missing:<br><br>4.1 Proof of claim accompanied with the evidence of debt;<br>4.2 Original Wet Script ink Promissory Note;<br>4.3 Original Title;<br>4.4 Current complete copy of the Bank's Original Application and the CUSIP number of the Application." |
| January 31, 2011 | The special process server personally serves Korzen at his address in Chicago. |
| February 22, 2011 | Defendants fail to appear for the case management conference. |
| August 16, 2011 | Parkway issues a request to admit facts to defendants, seeking admission of various basic facts regarding the transaction. These include genuineness of the documents signed by defendants and the default created by the missed payments. |
| August 31, 2011 | On Parkway's motion, the circuit court strikes the affirmative matter contained in paragraph 4 of defendants' answer. Defendants never amended these statements, nor filed traditional affirmative defenses at any later date. |
| September 15, 2011 | Korzen recasts the "other affirmative matter" material which the circuit court struck from his answer and files it as a request for production of documents on Parkway. Included in the request is a demand for an "Original Wet Script ink Promissory Note [*sic*]." |

| October 12, 2011 | Parkway responds to defendants' request for production of documents, acknowledging that Parkway will produce the original note for inspection. Parkway responds to the other requests by generally stating that they held no responsive documents or that the requests were vague. |
|---|---|
| December 7, 2011 | Parkway presents a motion for summary judgment which relies, in part, on defendants' failure to respond to Parkway's request to admit facts. Defendants file a written motion for a continuance on Parkway's motion for summary judgment. |
| December 8, 2011 | The circuit court grants a briefing schedule on Parkway's motion for summary judgment, and sets hearing on the motion for February 9, 2012. The court also orders Parkway to produce the original note for inspection at its office by December 29, 2011. |
| December 15, 2011 | Parkway's attorneys send Zanzola and Korzen letters stating as follows:<br><br>"This letter will serve to confirm our telephone conversation earlier today. You previously requested that Parkway Bank produce the original Note at issue in the above-captioned case for inspection by you at a Parkway Bank location. As discussed in our telephone conversation, Parkway Bank shall produce the Note for your inspection upon setting up an appointment with your loan officer.<br><br>Your loan officer is Loukas Rogaris. Mr. Rogaris can be reached at [phone number]. The Order entered on December 8, 2011, requires that you inspect the original Note by December 29, 2011, so please be sure to contact Mr. Rogaris promptly.<br><br>Please feel free to contact me should you have any questions." |

| January 4, 2012 | Defendants file responses to Parkway's request to admit facts, about four months late. Defendants' response includes a request to "toll the statute of limitations." The response is laden with objections and nonsense legalistic jargon. The record does not indicate that defendants ever: (1) requested a conference pursuant to Illinois Supreme Court Rule 201(k) (Ill. S. Ct. R. 201(k) (eff. July 1, 2002)) to resolve the objections; (2) filed any motion to request a ruling on the objections; or (3) filed or presented a motion asking the circuit court to extend the time to respond to the request to admit facts. See Ill. S. Ct. R. 216(c) (eff. Jan. 1, 2011) ("Any objection to a request or to an answer shall be heard by the court upon prompt notice and motion of the party making the request."). |
|---|---|
| January 12, 2012 | Defendants file a pleading objecting to Parkway's motion for summary judgment. In the objection, defendants refer to themselves as "alleged defendants." The only point raised in the objection is that the alleged failure of Parkway to produce the original note for inspection creates a material issue of genuine fact preventing summary judgment. The objection is unverified. It contains no supporting affidavit, nor it is executed under section 1-109 of the Illinois Code of Civil Procedure (Code of Civil Procedure) (735 ILCS 5/1-109 (West 2010)). In particular, the objection also contains no affidavit pursuant to Illinois Supreme Court Rule 191(b) (Ill. S. Ct. R. 191(b) (eff. July 1, 2002)), explaining why the lack of the original note prevented them from fully responding to the motion for summary judgment.

Defendants also file a similar pleading objecting to Parkway's motion to default unknown owners and non-record claimants, even though they have no standing to do so since that motion was not directed against them. |
| January 19, 2012 | Parkway files a reply in support of its motion for summary judgment. The reply asserts that Parkway's attorneys sent defendants a letter on December 15, 2011, offering defendants an opportunity for them to inspect the original notes by making an appointment to see them at Parkway's office (not its attorneys' offices). It also states that defendants admitted all the relevant facts by failing to timely respond to plaintiff's request to admit facts. |

| | |
|---|---|
| February 7, 2012 | Defendants file a motion to dismiss the case with prejudice, based on Parkway's alleged failure to respond to the demand to produce the original note. The motion consists merely of fact-based assertions, and is not accompanied by any affidavit. In the motion, defendants admit receiving the December 15, 2011 letter from Parkway, but state that they left messages to establish an appointment to which Parkway did not respond. In particular, defendants assert that when they did reach a representative of Parkway on January 19, 2012, he incorrectly claimed that Parkway had until February 9, 2012 to produce the note. The record does not show that defendants scheduled this motion for hearing on any particular date, nor that they ever visited Parkway to view the original note. |
| February 9, 2012 | The circuit court grants Parkway's motion for summary judgment of foreclosure and orders that the property be sold at auction to satisfy the debt. The order finds that defendants waived their rights to redeem the property pursuant to section 15-1601 of the Foreclosure Law (735 ILCS 5/15-1601 (West 2010)), which indicates that the property is non-residential. The order contains no language pursuant to Illinois Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)) indicating that the order is final or appealable. |
| February 16, 2012 | Defendants file a notice of appeal from the February 9, 2012 order of foreclosure, which is premature because such orders are interlocutory and not appealable until the court has confirmed the sale. *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 11. The appeal is assigned docket number 1-12-0556 in this court. |
| February 22, 2012 | Parkway's attorneys send a letter to defendants, advising them that their notice of appeal is premature. The letter cites two precedential cases so holding, and requests that defendants dismiss the appeal. If they do not, the attorneys state that they will file an emergency motion to dismiss the appeal and seek sanctions against them under Illinois Supreme Court Rule 375 (Ill. S. Ct. R. 375 (eff. Feb. 1, 1994)). |

| February 22, 2012 | Defendants file a "motion and declaration" which asks the circuit court to vacate the order of foreclosure and sale, and various other orders, and to dismiss the case. The pleading is supported by no affidavits, and was filed both in the circuit court and in this court. It raises a first group of entirely new issues. The main arguments in, and elements of, this confusingly drafted document are:<br><br>1. Parkway improperly objected to defendants' request for production of the "original title," "Parkway Bank's original application and CUSIP number," and "documents evidence Bank's Right to Ownership of Victor Korzen's property," claiming these requests were "vague."<br><br>2. A recitation of various telephone and other communications between the parties regarding inspection of the note.<br><br>3. Only Korzen owns the subject property. However, Parkway did not serve Korzen but instead only mailed Korzen's service copy to Zanzola. Defendants claim this was "in violation of process service requirements." The motion does not address, in any way, the apparently valid service on Korzen by the special process server on January 31, 2011.<br><br>4. The trial judge "blatantly" issued the foreclosure order "in clear violation and ignorance" of the allegedly nonproduced documents and that he "engaged himself in fraud *** possibly in conspiracy with" Parkway. |
|---|---|

| February 22, 2012 (continued) | 5. The foreclosure violated a laundry list of various statutes. This list is, like the 15 points in defendants' brief now before us, presented in conclusory fashion without explaining what occurred that actually violated the particular statutes. In addition, many of the cited statutes are utterly inapplicable. The claims include: (a) Parkway failed to provide proof of debt as required by the federal Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.* (2006)); (b) there was a "genuine issue of material fact" under section 2-615 of the Code of Civil Procedure (a provision which has nothing to do with genuine issues of material fact); (c) there are applicable "exceptions" under section 15-1506 of the Foreclosure Law, a provision which sets forth the evidence required to obtain a foreclosure judgment; (d) there was a "lack of evidence that the property belongs to the claimant" under section 12-204 (735 ILCS 5/12-204 (West 2010)) (a statute which deals with personal property, not real estate); and (e) violation of owner protection provisions, workout options, and a mediation program (none of which apply to vacant land). |
| --- | --- |
| February 29, 2012 | Defendants file a "clarification letter" in both the appellate and circuit courts stating that Parkway's attorneys have sent them a "threat letter *** blackmailing them with 'sanctions.' " The letter states that they have filed a "motion and declaration to vacate the order for summary judgment," and that because the circuit court's failure to act on the motion within seven days renders the foreclosure order appealable, they request to amend the notice of appeal to be a notice of interlocutory appeal. |

| March 12, 2012 | A motion panel of this court denies Parkway's motion to dismiss the appeal in case No. 1-12-0556, without explanation.[2] By separate order, the same panel construes the February 29, 2012 "clarification letter" as a motion to amend the notice of appeal, and then denies that motion. |
|---|---|
| March 16, 2012 | Korzen and Zanzola sign and record two documents with the Cook County Recorder of Deeds as document number 1207622015.<br><br>The first is entitled "GRANTEE/ASSIGNEE'S NOTICE OF UPDATE OF LAND PATENT." The recorded document claims to operate *nunc pro tunc* to October 24, 2006. It is laden with nonsense legal jargon, cites at least 21 ancient laws and treaties, and concludes that the new land patent is "prima facie conclusive evidence of title." It also states that if the land patent is not challenged within 90 days "with lawfully documented proof to the contrary," all claims against the property will be "forever" estopped. Attached to the recorded document are copies of original land patents, apparently covering a larger parcel containing the underlying property, from the United States of America, signed by President James K. Polk in 1848.<br><br>The second, labeled "NOTICE OF ACKNOWLEDGMENT, DELIVERY AND ACCEPTANCE OF DEED," states that Korzen and Zanzola accepted a copy of "our acknowledged deed" from the recorder of deeds, "thereby perfecting and correcting the deed, without any intent of granting or assigning *** to any person other than ourselves." |

---

[2]This court frequently receives premature appeals from foreclosure defendants, and just as frequently dismisses them because the underlying order is not yet appealable. We cannot discern why a different result occurred here. Perhaps defendants' disorganized opposition papers made it doubtful that the unappealability of the order was as clear-cut as it actually was. Perhaps the motion panel felt it better to review the briefs before summarily dismissing the case. Even so, it was proper for Parkway's attorneys to threaten defendants with sanctions if they did not withdraw their appeal. Decades of binding precedent make it perfectly clear that a judgment of foreclosure is not appealable unless the circuit court specifically makes the order appealable by adding language pursuant to Illinois Supreme Court Rule 304(a). See *EMC Mortgage Corp.*, 2012 IL 113419, ¶ 11 (calling the issue "well settled," based on *In re Marriage of Verdung*, 126 Ill. 2d 542, 555 (1989), *Deutsche Bank National Trust Co. v. Snick*, 2011 IL App (3d) 100436, ¶ 8, and *GMB Financial Group, Inc. v. Marzano*, 385 Ill. App. 3d 978, 982 (2008)).

| | |
|---|---|
| March 23, 2012 | Korzen records his own affidavit with the recorder of deeds as document number 1208318023, stating that he is a "living, breathing, sentient being on the land, a Natural Person and therefore is not and cannot be any ARTIFICIAL PERSON and, therefore, is exempt from any and all identifications, treatments, and requirements as such pursuant to any process, law, code, or statute or any color thereof." The affidavit proceeds to essentially disclaim the authority of the American court system.<br><br>Zanzola records a similar affidavit with the recorder of deeds of McHenry County, apparently his home county, as document number 2012R0011749.<br><br>Neither of these affidavits makes any specific reference to the subject property. |
| March 26, 2012 | Defendants file an "emergency motion for admission of public records" and to stay the foreclosure sale ("emergency motion"). The motion inconsistently asserts that only Korzen owns the property, but also claims that both Korzen and Zanzola do. In large part, it relies on the land patent and "artificial person" documents, claiming that the documents make them the "rightful owners" of the property. No facts in the motion are supported by any affidavit. The motion includes, as exhibits, the various documents defendants recorded on March 16 and 23, 2012. |
| March 29, 2012 | The circuit court enters an order finding it has no jurisdiction to consider defendants' emergency motion because of the pending appeal. |
| March 30, 2012 | On its own motion, the circuit court vacates its March 29, 2012 order, and finds that it does have jurisdiction because the appeal was premature and an appeal of an unappealable order does not divest the court of jurisdiction. The order relies on *King City Federal Savings & Loan Ass'n v. Ison*, 80 Ill. App. 3d 900, 902 (1980).<br><br>The court sets a briefing schedule on the emergency motion and a hearing date for May 14, 2012, and stays the sale pending that hearing. |

| | |
|---|---|
| April 3, 2012 | The property is sold at auction, but the sale is later vacated because it was in violation of the March 30 stay order. |
| April 20, 2012 | Parkway responds to the emergency motion, and includes a voluminous 21-part assemblage of prior orders and pleadings illustrating the history of the case. |

| | |
|---|---|
| May 4, 2012 | Defendants reply in support of their emergency motion, and combine the reply with yet another motion to dismiss the case. The reply repeats many of the arguments defendants made earlier, but includes a second group of new arguments. These claims, none of which are supported by affidavit, are:<br><br>1. Parkway's attorneys are third-party debt collectors operating on their own behalf and interest.<br><br>2. Parkway's attorneys have no "corporate resolution or other lawfully recognizable notarized contract and/or a specific, detailed, and binding agreement between" Parkway and themselves.<br><br>3. The summary judgment was entered without consideration of the land patent. (Defendants do not explain how the land patent could have been so considered, since it was created a month after the court entered the foreclosure order.)<br><br>4. By asserting that defendants had admitted various facts by failing to timely respond to the request to admit facts, plaintiffs' attorneys lied and engaged in misconduct. Similarly, the foreclosure judgment was "conspiratorial" and "done with prejudice and with bias."<br><br>5. Because the subject property is a "private section, a backyard, of the household located in a residential area, it is not commercial, and the provisions of the Fair Debt Collection Practices Act do, in fact, apply to it."<br><br>6. One particular attorney for Parkway "undertook unlawful action *** with her intent to snatch Victor Korzen's property for her wanton personal monetary enrichment."<br><br>7. Because Parkway did not "reveal" in the notes that it would "claim to be 'the true owner' " of the property, the assignment of rents is invalid and the court itself is "constitutionally defective and without lawful jurisdiction."<br><br>8. The land patent trumps all claims by Parkway with respect |

| | |
|---|---|
| | to the property. |
| May 14, 2012 | The court denies defendants': (1) emergency motion, which the order calls the "motion for admission of public records"; (2) motion to stay sale; and (3) motion to vacate the foreclosure. The court also vacates the April 3, 2012 sale. |

| | |
|---|---|
| June 6, 2012 | Defendants file a motion to reconsider the May 14, 2012 order. Again, the motion is not supported by any affidavit. The motion is more than merely a motion to reconsider, as it adds the following third group of new issues:<br><br>1. The complaint violates Federal Rule of Civil Procedure 17(a) (Fed. R. Civ. P. 17(a)) because it was not brought by the real party in interest.<br><br>2. Parkway violated the Truth in Lending Act (15 U.S.C. § 1601 *et seq.* (2006)) because it is not the owner of the loan. Rather, it is a servicer for the true owner and therefore has committed fraud, theft, and extortion.<br><br>3. Federal Rule of Evidence 1002 (Fed. R. Evid. 1002) required Parkway to produce the original note.<br><br>4. Parkway failed to produce a "debt validation notice" within five days of contacting defendants to collect the debt, in violation of the Fair Debt Collection Practices Act.<br><br>5. The circuit court failed to act on its own motion to hold Parkway's attorney in contempt for only serving one of the two defendants.<br><br>6. Parkway's attorneys violated section 15-1104 of the Foreclosure Law (735 ILCS 5/15-1104 (West 2010)) by wrongfully inducing the court into making a finding of abandonment regarding the subject property. (The court made no such finding, however.)<br><br>7. Parkway violated various federal rules by not making certain disclosures at the closing.<br><br>In the motion, defendants repeat two particular arguments on which we specially remark below, because it is this motion upon which defendants rely in this court. These arguments are: |

-16-

| | |
|---|---|
| June 6, 2012 (continued) | 1. Because defendants hold a land patent, no one else can claim any ownership interest in the property. |
| | 2. Korzen was not named as a defendant in the original complaint. |
| July 3, 2012 | The circuit court sets a briefing schedule on the motion to reconsider, stays the sale pending the hearing, and sets the motion for hearing on August 22, 2012. |
| July 19, 2012 | Parkway files a motion for sanctions against defendants. |
| August 22, 2012 | The circuit court denies defendants' motion to reconsider and enters and continues plaintiff's motion for sanctions "generally." |
| | The record contains a transcript of the proceedings this day. The transcript shows that Zanzola confronted the judge with demands to show Zanzola his oath of office. Zanzola also confirmed that the property was a backyard with a shed, but otherwise vacant. After the judge ruled, Zanzola objected, stating that plaintiff, as a "corporation cannot otherwise contend with a living natural man or woman," and mis-citing *Rundle v. Delaware*, 55 U.S. (14 How.) 80 (1852), for that proposition. Korzen requested leave of court to take depositions. |
| August 22, 2012 | Defendants file a motion for leave to take discovery depositions of Parkway's attorneys, requesting that they bring, among other things, a copy of the visas that allowed the attorneys to enter the United States. Defendants set the depositions, apparently without any permission from the presiding judge to do so, for the Third Municipal District courthouse in Rolling Meadows, Illinois. |
| September 10, 2012 | This court dismisses defendants' appeal in case No. 1-12-0556 for want of prosecution. |

| October 23, 2012 | Defendants serve a subpoena directly on Parkway Bank requesting production of materials regarding the contract between Parkway and its attorneys. Included are demands that Parkway produce the "bona fide" written contract between it and its law firm; documentation that the person who signed the contract for Parkway was authorized to do so by Parkway's board of directors, and law licenses, oaths of office, bonds, and malpractice insurance for the attorneys. |
|---|---|
| October 26, 2012 | Parkway files a motion to quash the subpoena, noting that discovery is inappropriate because the case is essentially over, the materials sought are irrelevant, and that it was inappropriate to subpoena documents directly from it rather than making a request through its attorneys of record. |
| November 9, 2012 | The circuit court grants Parkway's motion to quash the subpoena. |
| November 9, 2012 | The circuit court sets a briefing schedule on plaintiff's motion to confirm the sale, with a hearing date of January 10, 2013. |
| November 30, 2012 | Defendants file a response to the motion to confirm sale, raising a host of the same issues they raised in their earlier pleadings. The response raises a fourth group of new issues, claiming that the sale should not be confirmed because the bank's attorneys failed "to prove they are attorneys licensed" in Illinois. It also claims that the attorneys' letter asking them to withdraw their premature appeal was "pertinacious and frivolous." The response does not, however, invoke any of the statutory bases applicable to judicial confirmation of foreclosure sales. See, *e.g.*, *NAB Bank v. LaSalle Bank, N.A.*, 2013 IL App (1st) 121147, ¶¶ 8-21 (applying standards in section 15-1508(b) (735 ILCS 5/15-1508(b) (West 2010))). The response is not supported by any affidavit. |
| January 10, 2013 | The circuit court enters an order confirming the sale, finding that Parkway purchased the property for a credit bid of a sum less than what was owed, resulting in a deficiency of $50,958.09. The court awards Parkway an additional $17,058.15 in postforeclosure judgment attorney fees, but denies Parkway's motion for sanctions. |
| February 7, 2013 | Defendants file a notice of appeal from the foreclosure order and the order confirming sale. |

¶ 6                                     ANALYSIS

¶ 7                          Violation of Appellate Rules

¶ 8          Before we discuss the merits of the appeal, we address Parkway's complaint regarding various errors and omissions in defendants' brief, and defendants' failure to file a docketing statement. It asks us to dismiss the appeal based on these errors and omissions.

¶ 9          Defendants' brief contains: (1) a table of contents containing no citations to authority as required by Illinois Supreme Court Rule 341(h) (Ill. S. Ct. R. 341(h) (eff. Sept. 1, 2006)); (2) a five-page list of 15 issues for appeal, many of which are barely comprehensible; (3) a jurisdictional statement saying that the circuit court judge was ignorant; (4) a three-page cavalcade of citations to mostly irrelevant statutes, including some never relied on in the court below; (5) a four-line statement of facts referring the reader to an attached exhibit which is actually an affidavit signed by one of the defendants haranguing the judge and Parkway's attorneys; (6) a half-page argument section merely incorporating a particular pleading filed in the court below and not citing the record in any manner; (7) a "standard of review" paragraph citing an inapplicable federal court rule; (8) a two-page conclusion repeating much of the same material already presented; and (9) a short appendix containing a few selected documents from the record, but not including copies of the orders actually being appealed from as required by Illinois Supreme Court Rule 342 (Ill. S. Ct. R. 342 (eff. Jan. 1, 2005)).

¶ 10         We agree that defendants' brief fails to comply with virtually all of the requirements of Illinois Supreme Court Rule 341. This court is entitled to be presented with clearly defined issues, citations to pertinent authority and cohesive arguments. *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009). The court "is not merely a repository into which an appellant may 'dump the burden of argument and research.' " *Id.* (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)). The rules of procedure concerning appellate briefs are rules, not mere suggestions, and it is within our discretion to strike a brief and dismiss the appeal for failure to comply with those rules. See *Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999). However, despite defendants' manifest disregard for the appellate rules, we believe that plenary review of this particular case is important to provide guidance to lower courts faced with similar improper litigation tactics. Accordingly, we decline to dismiss the appeal and find that defendants' lack of compliance with Supreme Court Rule 341(h) does not preclude our review. See *In re Estate of Jackson*, 354 Ill. App. 3d 616, 620 (2004) (reviewing court has choice to review merits, even in light of multiple Rule 341 mistakes).

¶ 11         We turn to the merits of defendants' appeal, so much as we can discern them from their brief. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001) (*pro se* briefs failed to clearly articulate the errors relied upon for reversal or present an organized and cohesive argument in compliance with supreme court rules, but reviewing court nevertheless addressed the merits); *A.J. Maggio Co. v. Willis*, 316 Ill. App. 3d 1043, 1048 (2000) ("the waiver rule is a limitation on the parties and not on the courts"); *Village of Maywood v. Health, Inc.*, 104 Ill. App. 3d 948, 952 (1982) (in the interest of justice, reviewing court exercised its discretionary authority to consider portions of the defendants'

brief where the points cited were not argued).[3]

¶ 12                                        Standard of Review

¶ 13        Despite the numerous points of alleged error, the case hinges on the circuit court's approval of two key orders: the order granting Parkway's summary judgment motion, which resulted in an order of foreclosure and sale; and the order confirming the judicial sale of the subject property. The standards for our review of each of these orders is well established.

¶ 14        Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). Summary judgment is a drastic measure and should only be granted when the moving party's right to judgment is "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). "Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied." *Id.* However, "summary judgment requires the responding party to come forward with the evidence that it has–it is ' "the put up or shut up moment in a lawsuit." ' " *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009) (quoting *Koszola v. Board of Education of the City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004), quoting *Schacht v. Wisconsin Department of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999)). We review a circuit court's entry of summary judgment *de novo*. *Outboard Marine Corp.*, 154 Ill. 2d at 102.

¶ 15        With respect to the order confirming sale, we note that section 15-1508(b) of the Foreclosure Law (735 ILCS 5/15-1508(b) (West 2010)) grants broad discretion to courts in approving or disapproving judicial sales. We review approval of judicial sales for abuse of discretion. *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 178 (2008).

¶ 16        With these standards in mind, we will review the 15 points of error, some of which we have aggregated due to relatedness.


¶ 17                            Service of Process on Defendant Korzen

¶ 18        Defendants claim that Parkway violated "process service requirements" by mailing the complaint and summons to Zanzola but not to Korzen. Korzen asserts that the mailing of the summons to Zanzola and naming Zanzola as a defendant was particularly wrong because only he, not Zanzola, is the owner of the subject property. Korzen's sole ownership assertion is belied by the January 22, 2007 postmortgage deed in which Korzen quitclaimed his interest to himself and Zanzola as joint tenants. It is also refuted by the fact that both Korzen and Zanzola signed the underlying mortgage. Because they did so, both are proper defendants

---

[3]Defendants also did not comply with Illinois Supreme Court Rule 312 (Ill. S. Ct. R. 312 (eff. Dec. 13, 2005)), which provides all appellants "shall file a docketing statement with the clerk of the reviewing court." On July 26, 2013, this court ordered defendants to file a docketing statement by August 15, 2013. Defendants filed their motion for leave to file late docketing statement on August 15, 2013. We have granted that motion.

in the case. 735 ILCS 5/15-1501(a) (West 2010). Additionally, Korzen never "interven[ed]" into the case as he claims. Both Korzen and Zanzola were named as defendants in the original complaint and that complaint was never amended.

¶ 19    The record demonstrates that Korzen was personally served on January 31, 2011, and that Zanzola was personally served on September 12, 2010. This was all that was necessary; any additional copies that may have been mailed by virtue of a later request he made to Parkway's attorneys were superfluous. Korzen never filed a motion to quash the January 31 service. In fact, the January 31 service was itself unnecessary because Korzen had already appeared in the case and filed an answer on October 28, 2010. By doing so, he waived his right to contest service. Under section 2-301(a-5) of the Code of Civil Procedure (735 ILCS 5/2-301(a-5) (West 2010)), a defendant who voluntarily files an answer waives all objections to the court's jurisdiction. See *Poplar Grove State Bank v. Powers*, 218 Ill. App. 3d 509, 515 (1991) (holding that a defendant "may not, by his voluntary action, invite the court to exercise its jurisdiction over him while he simultaneously denies that the court has such jurisdiction"). Accordingly, the manner of service of process in this case provides no basis for us to disturb the judgments below.

¶ 20            Parkway's Standing to Foreclose and the Sufficiency of Its Proof–
                            "Show Me the Note"

¶ 21    Defendants claim that Parkway did not demonstrate its standing to foreclose because it did not establish the fact that it was the true holder of its own loan. The linchpin of this argument is that defendants requested Parkway to produce the "original title" or original note(s) on numerous occasions but that Parkway did not do so.

¶ 22    The first part of this argument is easy to resolve. Defendants do not explain what an "original title" is. They also fail to cite any authority as to why such a document would either be a necessary element of proof in a foreclosure case, nor why it might be relevant here. Parkway responded to this request by saying that it was "vague."

¶ 23    An "original title" is "[a] title that creates a right for the first time" such as the title held by a fisherman who catches a particular fish for the first time. Black's Law Dictionary 1623 (9th ed. 2009). The term is used only once in the entire Illinois Compiled Statutes, and then merely in connection with an automobile title certificate. 625 ILCS 5/3-116(e) (West 2010). Our supreme court has not referred to an "original title" for land for over 40 years, but in that context, it apparently referred to it as the type of ownership held by the sovereign nation or state in land before it was first deeded to private owners. *Hickey v. Illinois Central R.R. Co.*, 35 Ill. 2d 427, 446-47 (1966) (referring to the State of Illinois's original title to the bed of Lake Michigan). So understood, an "original title" for land is not a written document that can be produced, but merely a characteristic or classification of ownership. Therefore, it is not something that Parkway could have produced.

¶ 24    The second part of this argument, dealing with production of the original notes, is more complicated. Preliminarily, we note that Parkway was free to ignore the document request which defendants slid into their answer. Discovery requests do not belong in the middle of answers, and the court struck the request anyway. Defendants did renew the same request

-21-

later, however. While defendants frame the lack of production under the rubric of standing, it is really a discovery dispute. We examine it under both characterizations. The standards applicable to standing in a foreclosure case are well settled. Standing is an affirmative defense and, as such, it is the defendant's burden to prove that the plaintiff does *not* have standing. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010). It is not the plaintiff's burden to prove it does have standing. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 22 (2004); *Mortgage Electronic Registration Systems, Inc. v. Barnes*, 406 Ill. App. 3d 1, 7 (2010) (foreclosure case). The mere fact that a copy of the note is attached to the complaint is itself *prima facie* evidence that the plaintiff owns the note. *U.S. Bank, N.A. v. Dunn*, No. 12 CV 1963, 2013 WL 1222054, at *3 (N.D. Ill. Mar. 25, 2013).

¶ 25 During the peak of the recent mortgage foreclosure crisis, a member of the United States House of Representatives, Marcy Kaptur, of Ohio, led the "show-me-the-note" charge, suggesting that borrowers could halt foreclosure cases and squat for free in their homes until the bank shows them the original note. Becky Yerak, *Distressed Homeowners Fight Foreclosure By Taking Their Lenders To Court*, Chi. Trib. Feb. 22, 2009, at C1. This tactic, however, does not work in Illinois.

¶ 26 For over 25 years, the Foreclosure Law has been interpreted as *not* requiring plaintiffs' production of the original note, nor any specific documentation demonstrating that it owns the note or the right to foreclose on the mortgage, other than the copy of the mortgage and note attached to the complaint.[4] *First Federal Savings & Loan Ass'n v. Chicago Title & Trust Co.*, 155 Ill. App. 3d 664, 665-67 (1987). *First Federal* interpreted former section 15-201 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, ¶ 15-201), a predecessor to the current section 15-1506(b) of the Foreclosure Law (735 ILCS 5/15-1506(b) (West 2010)). To ensure that *First Federal* is still good law, we must examine the statute in effect at the time the *First Federal* court interpreted it and compare it to the current statute.

¶ 27 The primary aim of statutory construction is to determine the legislature's intent, beginning with the plain language of the statute. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 180 (2011). "Where the language is clear and unambiguous, the statute must be given effect as written without resort to further aids of statutory construction." *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008).

¶ 28 Section 15-201 of the Code of Civil Procedure (then Ill. Rev. Stat. 1985, ch. 110, ¶ 15-201), interpreted in *First Federal*, provided as follows:

"In the trial of a foreclosure action, the evidence shall be taken in open court.

Where any fact alleged in the complaint is not denied by the answer filed thereto, a sworn verification of the complaint or a separate affidavit filed in the case setting forth

---

[4]We note that Illinois Supreme Court Rule 113(b) (Ill. S. Ct. R. 113(b) (eff. May 1, 2013)) now requires that the copy of the note attached to a foreclosure complaint must be a copy of the note as it currently exists, together with indorsements and allonges, but not necessarily assignments. There is no issue raised here about assignments or transfer of the note, as this case was brought by the original lender. Even so, because the rule only applies to cases filed after May 1, 2013, it is not relevant to our analysis.

such fact, is sufficient evidence thereof and no further evidence of such fact shall be required.

Where none of the facts alleged in the complaint are denied, upon motion supported by an affidavit stating the amount which is due the plaintiff, the court shall enter a judgment for the relief prayed in the complaint.

In such cases the evidence of the indebtedness and security foreclosed shall be exhibited to the court and appropriately marked and such exhibits or copies thereof shall be filed in the case." Ill. Rev. Stat. 1985, ch. 110, ¶ 15-201.

¶ 29 Public Act 84-1462 (Pub. Act 84-1462, § 7 (eff. July 1, 1987)) was a major recodification of our state's foreclosure laws.[5] It repealed section 15-201, but retained its basic principles and moved most of its original language into new Foreclosure Law sections 15-1506(a) and (b). Section 15-1506 has basically remained the same since the 1987 recodification, with the exception of some changes to subsections (f) and (i) made by Public Act 85-907 (Pub. Act 85-907, art. I, § 1 (eff. Nov. 23, 1987)), which are not relevant here.

¶ 30 Sections 15-1506(a) and (b) now provide as follows:

"(a) Evidence. In the trial of a foreclosure, the evidence to support the allegations of the complaint shall be taken in open court, except:

(1) where an allegation of fact in the complaint is not denied by a party's verified answer or verified counterclaim, or where a party pursuant to subsection (b) of Section 2-610 of the Code of Civil Procedure states, or is deemed to have stated, in its pleading that it has no knowledge of such allegation sufficient to form a belief and attaches the required affidavit, a sworn verification of the complaint or a separate affidavit setting forth such fact is sufficient evidence thereof against such party and no further evidence of such fact shall be required; and

(2) where all the allegations of fact in the complaint have been proved by verification of the complaint or affidavit, the court upon motion supported by an affidavit stating the amount which is due the mortgagee, shall enter a judgment of foreclosure as requested in the complaint.

(b) Instruments. In all cases the *evidence of* the indebtedness and the mortgage foreclosed shall be exhibited to the court and appropriately marked, and copies thereof shall be filed with the court." (Emphasis added.) 735 ILCS 5/15-1506(a), (b) (West 2010).

¶ 31 None of the versions of the statute use the word "original," nor does any specifically provide that originals must be produced in open court. With respect to production of original loan documents, the former law interpreted in *First Federal* is substantially the same as the

---

[5]See *In re Jones*, 219 B.R. 1013, 1019 (Bankr. N.D. Ill. 1998), *abrogated on other grounds by Colon v. Option One Mortgage Corp.*, 319 F.3d 912, 916 (7th Cir. 2003) (citing Illinois legislative history). See also Steven C. Lindberg & Wayne F. Bender, *The Illinois Mortgage Foreclosure Law*, 76 Ill. B.J. 800 (1987); Eric T. Freyfogle, *The New Judicial Roles in Illinois Mortgage Foreclosures*, 19 Loy. U. Chi. L.J. 933 (1988).

current law. Both laws provide: (a) that the evidence to support the allegations of the complaint shall be taken in open court; and (b) in cases of default or nondenial, the evidence of the indebtedness and security foreclosed shall be exhibited to the court and appropriately marked, and the exhibits or copies thereof shall be filed in the case. The only changes to the statute are merely stylistic, including one clarification that evidence of the indebtedness and security now must be exhibited in "all" cases. See 735 ILCS 5/15-1506(b) (West 2010).

¶ 32    The *First Federal* court held that former section 15-201 of the Code of Civil Procedure, which provided that "[i]n such cases the evidence of the indebtedness and security foreclosed shall be exhibited to the court and appropriately marked, and such exhibits or copies thereof shall be filed in the case," did not mandate production of an original mortgage or note. Ill. Rev. Stat. 1985, ch. 110, ¶ 15-201. The portion of section 15-201 at issue in *First Federal* is substantially identical to the parallel provision of section 15-1506(b) at issue here. Accordingly, the *First Federal* decision governs, and we again hold that in Illinois, production of the original note in open court, rather than simply relying on the copy attached to the complaint, is not a required element of proof in a foreclosure case. 735 ILCS 5/15-1506(b) (West 2010); *McFatridge v. Madigan*, 2013 IL 113676, ¶ 24 ("we will not read language into a statute which conflicts with the clearly expressed legislative intent").

¶ 33    Defendants rely on Federal Rules of Evidence, which are inapplicable to these proceedings. The newly adopted Illinois Rules of Evidence, which largely track the federal rules, actually support the validity of Parkway's proofs. Rule 1003 states that a duplicate of a document is admissible to the same extent as an original unless: "(1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Ill. R. Evid. 1003 (eff. Jan. 1, 2011).

¶ 34    That still leaves the issue of defendants' allegedly unsuccessful discovery request to view the original note. Given the amount of strife between the parties over this issue, Parkway should not have short-cutted the process by telling defendants to make an appointment to visit Parkway Bank to see the note. Defendants provide no explanation as to why the original note was so necessary when they had a copy of it. They do not contend that they even suspect that the note is a forgery, that its existence is a mystery to them, or that the copy was altered from the original in some way. Nonetheless, the discovery request was fair game, as it sought disclosure of relevant evidence. It was Parkway's obligation to produce the note at the place and by the time specified by the notice to produce, and by the court order–not through its bank officials, but through its attorneys. The matter could also have been easily resolved by simply bringing the note to open court along with a court reporter to make a record that it had been duly produced. It was not, and we are confronted with a record replete with conflicting accusations about who told what to whom. Defendants have spent a considerable amount of time complaining about their inability to view the note, but they pointedly do not claim that the copies attached to the complaint are forgeries, or that they never signed a note in the first place. Faced with defendants' clamor for the note, endlessly exhibited throughout the voluminous pleadings, the better course would have been for the circuit judge to stay proceedings on Parkway's summary judgment motion until the note was produced. Even if, however, we assume the bank did not produce the note, the foreclosure order was perfectly valid. We must, of course, give great deference to the trial judge's resolution of this

discovery issue and his apparent determination that Parkway had fulfilled its obligations, and the record gives us little on which to overturn that finding. See *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54 (2002) (the circuit court's rulings on discovery matters will not be disturbed on appeal absent an abuse of discretion). More crucially, though, defendants' reliance on this issue fails because of five fatal mistakes they made.

¶ 35                        Failure to Submit Want of Knowledge Affidavit

¶ 36    Unlike criminal defendants, who can remain mute and require the State to prove them guilty, civil defendants must answer a complaint truthfully and in good faith, even if that means undermining their own interests. See Ill. S. Ct. R. 137 (eff. Feb. 1, 1994) (The signature of a party on a pleading constitutes a certificate by him that he has read the pleading and "that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument," and "that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."). A civil complaint and a proper truthful answer delimit the factual disputes which the court must adjudicate. A common error by defendants, made even by seasoned foreclosure defense attorneys, is to answer with language such as: "the defendant neither admits nor denies paragraph x, but demands strict proof thereof." Defendants in civil lawsuits are not allowed to "demand strict proof" of facts they know are true, and so the words "demand strict proof" do not belong anywhere in a properly drafted answer.

¶ 37    A proper answer to a complaint must contain an explicit admission or an explicit denial of each allegation in the complaint. 735 ILCS 5/2-610(a) (West 2010). An allegation not explicitly denied is admitted unless: (1) the allegation is about damages, (2) the party states that it lacks knowledge of the matter sufficient to form a belief and supports this statement with an affidavit, or (3) the party has not had the chance to deny the allegation. 735 ILCS 5/2-610(b) (West 2010). "The failure of a defendant to explicitly deny a specific allegation in the complaint will be considered a judicial admission and will dispense with the need of submitting proof on the issue." *Gowdy v. Richter*, 20 Ill. App. 3d 514, 520 (1974).

¶ 38    In this case, defendants stated that they lacked knowledge sufficient to answer an allegation, but did not include the required lack of knowledge affidavit. Accordingly, they have admitted the allegation. *Hoxha v. LaSalle National Bank*, 365 Ill. App. 3d 80, 85 (2006); see also 735 ILCS 5/1-109 (West 2010). Because the verified answer contains no "want of knowledge" affidavit as required by section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109 (West 2010)), defendants admitted the allegations of count I, paragraph 2, of the complaint, which establish the authenticity of the notes and mortgage.

¶ 39          Failure to Deny Authenticity of Commercial Documents Under Oath

¶ 40    Modern banking practices, along with the inventions of the photocopier, fax machine, word processor, and computer, have made disputes regarding the authenticity of written contracts and business documents extraordinarily rare. This is particularly true in foreclosure cases. Mortgages are closed at title insurance company offices. Borrowers leave the closings

with photocopies of their mortgage documents in large file folders, and they are admonished to securely keep the files with their most important papers and possessions. The title company immediately records a copy of the mortgage with the recorder of deeds, whose records forever memorialize the image of the mortgage as it existed on the day of the closing. See 55 ILCS 5/3-5010 (West 2010) (duties of recorder); 55 ILCS 5/3-5013 (West 2010) (transcription or reproduction of written instruments to be recorded); Solomon Gutstein, Illinois Practice § 12:77 (2d ed. 2000).

¶ 41      Our legislature has enacted a special rule which discourages debtors from unduly prolonging collection lawsuits with obdurate denials. If a defendant truly wishes to deny the authenticity of a mortgage or note, he must do so under oath so as to subject himself to a criminal perjury charge if his denial is knowingly false. Defendants merely stated lack of knowledge regarding the mortgage and note. By doing so, they automatically admitted these allegations. See 735 ILCS 5/2-605(b) (West 2010) (providing that the "allegation of the execution or assignment of any written instrument is admitted unless denied in a pleading verified by oath").

¶ 42                    Failure to Deny the "Deemed" Allegations Common to
                                  All Foreclosure Complaints

¶ 43      Section 15-1504 of the Foreclosure Law (735 ILCS 5/15-1504 (West 2010)) sets forth a form complaint which many plaintiffs, including Parkway here, use virtually verbatim. Under subsections (c), (d), and (e) of that section, if the complaint is "substantially" in the specified statutory form, the allegations in the complaint "are deemed and construed" to also include 12 more statutorily specified allegations. Among these additional allegations, set forth in section 15-1504(c), are:

"(1) that, on the date indicated, the obligor of the indebtedness or other obligations secured by the mortgage was justly indebted in the amount of the indicated original indebtedness to the original mortgage or payee of the mortgage note;

(2) that the exhibits attached are true and correct copies of the mortgage and note ***[.]" 735 ILCS 5/15-1504(c) (West 2010).

By failing to deny these presumed allegations, defendants admitted the authenticity of the copy of the mortgage and note attached to the complaint.

¶ 44                          Failure to Deny Authenticity of Signatures

¶ 45      As noted immediately above, defendants also did not specifically deny the authenticity of their signatures on the note. Section 3-308 of the Illinois Uniform Commercial Code (810 ILCS 5/3-308 (West 2010)) applies to this situation. It provides that "the authenticity of, and authority to make, each signature on the instrument is admitted unless *specifically denied* in the pleadings." (Emphasis added.) 810 ILCS 5/3-308 (West 2010).

¶ 46                          Failure to Submit Rule 191(b) Affidavit

¶ 47      Court rules provide an avenue of relief for defendants like Korzen and Zanzola, who

contend that crucial evidence necessary to oppose the motion is in the hands of the movant or other adverse parties, who have not responded to a discovery request for that evidence.

¶ 48 Illinois Supreme Court Rule 191(b) allows them to respond to the summary judgment motion with an affidavit explaining the situation. See Ill. S. Ct. R. 191(b) (eff. July 1, 2002). The affidavit might explain why only the original note, and not the photocopy, can provide the information necessary to form a valid defense. These defendants filed numerous pleadings complaining about discovery, but never filed a Rule 191(b) affidavit. The rule provides, in pertinent part:

> "If the affidavit of either party contains a statement that any of the material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his belief, the court may make any order that may be just, either granting or refusing the motion, or granting a continuance to permit affidavits to be obtained, or for submitting interrogatories to or taking the depositions of any of the persons so named, or for producing papers or documents in the possession of those persons or furnishing sworn copies thereof." *Id.*

Parties who fail to file Rule 191(b) affidavits cannot complain that the "discovery process was insufficient or limited." *Kane v. Motorola, Inc.*, 335 Ill. App. 3d 214, 225 (2002).

¶ 49 Somewhat related to the Rule 191(b) issue is the actual substance of defendants' response to Parkway's summary judgment motion. This case is simply about whether a $100,000 note was paid on time. Even assuming that Parkway's efforts to produce the note were insufficient, Parkway did submit an affidavit establishing the basic facts regarding the loan, its documentation, and defendants' default. Defendants presented nothing in opposition to create an issue of triable fact regarding the payment of the note. Denials in a defendant's answer do not create a material issue of genuine fact to prevent summary judgment. *Epstein v. Yoder*, 72 Ill. App. 3d 966, 972 (1979). When a party moving for summary judgment files supporting affidavits containing well-pleaded facts, and the party opposing the motion files no counteraffidavits, the material facts set forth in the movant's affidavits stand as admitted. See *Patrick Media Group, Inc. v. City of Chicago*, 255 Ill. App. 3d 1, 6-7 (1993). The opposing party may not stand on his or her pleadings in order to create a genuine issue of material fact. *Fitzpatrick v. Human Rights Comm'n*, 267 Ill. App. 3d 386, 391 (1994).

¶ 50                              Request to Admit Facts

¶ 51 Parkway also argues that defendants' failure to timely respond to its request to admit facts itself established the relevant facts and requires us to affirm the court below. Although we have determined the foreclosure order was valid for other reasons, we address this additional issue to explain why we believe it is not well-taken.

¶ 52 After receiving defendants' answer, Parkway served them with a request to admit facts. In summary, the facts included a request related to the authenticity of the copies of the note and mortgage attached to the complaint, the default on the note created by the failure to pay on time, and other basic facts related to the lawsuit. Under Illinois Supreme Court Rule 216

(Ill. S. Ct. R. 216 (eff. Jan. 1, 2011)), defendants' answers to the request were due 28 days later, or September 13, 2011. Defendants argue strongly that they preserved their rights by filing a motion to "toll the statute of limitations" on January 4, 2012, more than three months after the original due date, but the circuit court never granted that motion. Their belated attempt for an extension of time was never granted, but even so, it is not dispositive because the request to admit facts itself was defective. The request to admit did not conform to Rule 216(g), which became effective January 1, 2011, and requires that requests to admit facts contain an admonition in a prominent place on the first page in 12-point or larger boldface type stating: "**WARNING: If you fail to serve the response required by Rule 216 within 28 days after you are served with this paper, all the facts set forth in the requests will be deemed true and all the documents described in the requests will be deemed genuine.**" Ill. S. Ct. R. 216(g) (eff. Jan. 1, 2011). The committee comments to amended Rule 216(g) state that, "[c]onsistent with *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334 (2007), trial courts are vested with discretion with respect to requests for admission." Ill. S. Ct. R. 216(g), Committee Comments (adopted Oct. 1, 2010). Because our supreme court has suggested the bold print rule might not be mandatory, and because the parties here have not briefed the applicability of Rule 216(g) here, we do not specifically hold that failure to include this notice automatically invalidates a request to admit facts. In light of the particular facts before us, we simply decline to uphold the foreclosure judgment solely on defendants' failure to timely respond to the request.

¶ 53                    Contempt Penalties Against Parkway's Attorneys

¶ 54    Defendants also complain that the circuit court should have held Parkway's attorneys "in civil contempt" because Parkway did not produce the original note for their inspection and because they consistently asserted, to the contrary, that they made appropriate efforts to do so. As noted above, there is a factual dispute regarding whether Parkway provided a valid opportunity for the inspection. "The use of discovery sanctions as a general deterrent 'provides a strong incentive for all litigants to fully and accurately comply with discovery rules.' " *Byrnes v. Fiscella*, 217 Ill. App. 3d 831, 839 (1991) (quoting *Mitchell v. Wayne Corp.*, 180 Ill. App. 3d 796, 802 (1989)). "A court of review must give considerable deference to the circuit court's decision to impose sanctions; its decision will not be reversed absent an abuse of discretion." *Cirrincione v. Westminster Gardens Ltd. Partnership*, 352 Ill. App. 3d 755, 761 (2004); see also *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 110 (2004); *Sbarboro v. Vollala*, 392 Ill. App. 3d 1040, 1053 (2009). More importantly, defendants forfeited their claim for discovery of the original note by failing to include a Supreme Court Rule 191(b) affidavit in opposition to Parkway's motion for summary judgment.

¶ 55                    Violation of the Federal Fair Debt Collection Practices Act

¶ 56    The argument in defendants' brief on the next point is somewhat incomprehensible. We believe that defendants intend to assert as follows: by finding that the property was not residential, the circuit court created a false premise, which led it to incorrectly find that the

federal Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.* (2006)) was inapplicable to the underlying transaction. Defendants' brief claims the property is a backyard of an adjoining residence and, thus, is "residential" property. However, Zanzola admitted in open court that the property was a backyard with a shed, but otherwise vacant. At one point, his reply brief[6] frankly states that the parcel is "not buildable," but a few pages later, the reply brief contradictorily states that ruling in favor of Parkway will render a family homeless. It is clear that the property is, in fact, "non-residential" under the Foreclosure Law, a classification which is sometimes nicknamed "commercial," even though no business enterprise is actually located on the subject property. 735 ILCS 5/15-1219 (West 2010) (defining "residential" property under the Foreclosure Law).

¶ 57    The same issue under the Fair Debt Collection Practices Act is not as clear-cut as Parkway suggests. The Fair Debt Collection Practices Act applies to debt transactions where a consumer is obliged to pay money for something used "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5) (2006). Whether a debt is incurred " 'primarily for personal, family, or household purposes' " is a fact-driven one to be decided on a case-by-case basis looking at all relevant factors. *Hansen v. Ticket Track, Inc.*, 280 F. Supp. 2d 1196, 1204 (W.D. Wash. 2003). It is undisputed that the property is vacant in the sense that no one resides on it. If, however, as defendants assert, the subject property is "the backyard" of their home, a plausible argument could be made that the transaction was for "household purposes" and, thus, is protected by the Fair Debt Collection Practices Act. We need not reach that factual issue, however, because defendants provide nothing in their brief to explain exactly what Parkway did that violated the Fair Debt Collection Practices Act. As they have done throughout their pleadings both here and in the circuit court, defendants simply throw out citations to statutes without setting forth any facts whatsoever of how they might apply. Neither the circuit court nor the reviewing court has the duty to dig through this dross to discern some relevant point.

¶ 58    Arguments that fail to comply with Supreme Court Rule 341(h)(7) do not merit consideration on appeal (*Maun v. Department of Professional Regulation*, 299 Ill. App. 3d 388, 399 (1998)) and may be rejected for that reason alone (*Calomino v. Board of Fire & Police Commissioners*, 273 Ill. App. 3d 494, 501 (1995)). Accordingly, defendants have

---

[6]The reply brief also contains additional factual material from the Village of Palatine, which is dated in July 2013, after Parkway had already filed its brief in this court. It was not included in the record below, nor, of course, mentioned in the opening brief, since it did not even exist when that brief was filed. On our own motion, we strike this additional factual material, because it violates Illinois Supreme Court Rule 341(j), which provides the reply brief "shall be confined strictly to replying to arguments presented in the brief of the appellee and need contain only Argument." Ill. S. Ct. R. 341(j) (eff. Feb. 6, 2013). Moreover, points not argued in the opening brief are forfeited and cannot be raised for the first time in the reply brief. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) ("Points not argued are waived and shall not be raised in the reply brief ***."); see also *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 855 (2007). In addition, "[a]ttachments to briefs that are not included in the record are not properly before this court and cannot be used to supplement the record." *McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 673, 679 (2000).

forfeited this issue. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) ("Points not argued are waived and shall not be raised in the reply brief ***.").

¶ 59                                    Postjudgment Discovery

¶ 60        In Illinois, mortgage foreclosure cases are bifurcated. The main part of the case is resolved when the circuit court enters a judgment of foreclosure and sale. While that order is not appealable, it disposes of virtually every issue in this case. The only remaining tasks are for the sale to take place and the court to confirm the sale. 735 ILCS 5/15-1508(b) (West 2010). Accordingly, when the foreclosure has been entered, the defendant has lost the case for all intents and purposes. That being so, discovery is generally not available because it becomes irrelevant, except as it may relate to some narrow issue regarding the conduct of the actual sale. See *One West Bank, FSB v. Hawthorne*, 2013 IL App (5th) 110475, ¶¶ 21-25 (affirming order approving sale of foreclosed property and rejecting defendant's request to engage in further discovery to determine if fraud occurred in the course of the foreclosure proceedings); *Mortgage Electronic Registration Systems, Inc. v. Barnes*, 406 Ill. App. 3d 1, 6 (2010) (holding that defenses to foreclosure may not be asserted at sale stage). After losing this case, however, defendants suddenly undertook aggressive discovery, including serving subpoenas on Parkway Bank officers without going through their attorneys of record. They also served requests to produce documents on Parkway's attorneys, demanding that they produce documents showing that they were licensed to practice law and that they reveal attorney-client privileged information regarding their contractual relationship with Parkway. These tactics–turning the tables by demanding that the attorneys actually prove who they are and that they bring in ironclad written documentation that they represent plaintiff–have no purpose other than to waste time of judges, court staff, and opposing parties. Attorneys who file lawsuits or appear for parties in litigation have no burden to tender their oaths of office on request or to provide written proof to an opposing party that they actually were hired by their clients. See *Gray v. First National Bank of Chicago*, 388 Ill. 124, 129 (1944) ("where an attorney appears of record for a party, the presumption is that his appearance in such a capacity was duly authorized by the person for whom he is appearing").

¶ 61        On appeal, defendants assert that the circuit court's decision to quash the subpoena was in error.[7] They also contend that Parkway's attorneys "admitted" they were not licensed by failing to deny they were unlicensed. However, defendants did not issue their own request to admit facts, failure to respond to which would result in an admission. A party that fails to respond to a subpoena for documents does not automatically admit that the documents requested do not exist.

---

[7]Among the authorities defendants cite on this point are deposition rules for internal administrative hearings conducted by the Illinois Auditor General. Defendants do not cite the auditor general's rules for comparative purposes. They cite them as binding authority in this case, claiming that the circuit judge somehow violated these rules. We note this merely to further illustrate defendants' apparent desire to complicate the record as much as possible by stuffing it with irrelevant points and arguments.

¶ 62 The use of subpoenas is a judicial process, and courts have broad and flexible powers to prevent abuses of their process. *People v. Walley*, 215 Ill. App. 3d 971, 974 (1991). "For good cause shown, the court on motion may quash or modify any subpoena or, in the case of a subpoena duces tecum, condition the denial of the motion upon payment in advance by the person in whose behalf the subpoena is issued of the reasonable expense of producing any item therein specified." 735 ILCS 5/2-1101 (West 2010). We review a circuit court's decision to quash a subpoena for abuse of discretion. *People v. Paris*, 295 Ill. App. 3d 372, 378 (1998).

¶ 63 Since the information sought was manifestly irrelevant or related, if at all, to issues that had already been adjudicated, we find no abuse of discretion here. Nor do we find that the failure, if any, of the attorneys to respond to subpoenas requesting the production of documents created any error in the record. The case was essentially over and none of the information sought was relevant to the remaining issues in the case. Defendants' issuance of the subpoenas was the legal equivalent of stepping back on the court to shoot free throws to increase their score after the game buzzer had sounded and the winning team had returned to the locker room. More importantly, the subpoenas were themselves quashed, relieving the recipients of any obligation to respond to them. We can discern no conceivable purposes for defendants' postjudgment discovery, whether through subpoena or deposition, other than to harass Parkway and its attorneys and create additional work for the judiciary. *Reda*, 199 Ill. 2d at 54 (circuit court's rulings on discovery matters will not be disturbed on appeal absent a manifest abuse of discretion); *Profesco Corp. v. Dehm*, 196 Ill. App. 3d 127, 130 (1990) (the circuit court's exercise of discretion regarding discovery violations should be afforded considerable deference).

¶ 64 Truth in Lending Act

¶ 65 Like the Fair Debt Collection Practices Act, the federal Truth in Lending Act applies to consumer credit transactions in which the extension of credit is "primarily for personal, family, or household purposes." 15 U.S.C. § 1602(i) (2006). Defendants claim, without explanatory detail or citation to the record, that Parkway Bank was not the owner of the loan because its attorneys were acting as third-party debt collectors regulated under the Truth in Lending Act. It seems that defendants' Truth in Lending Act claim bootstraps on their claim that Parkway does not own the loan because it did not produce the note. Under that view, Parkway would have violated the Truth-in-Lending Act by trying to collect on a loan it did not own. We explained previously why failure to produce the note did not prevent the circuit court from granting a foreclosure order. Even if the attorneys could be so classified, defendants' brief fails to explain exactly what the attorneys did that violated the Truth in Lending Act. Therefore, defendants have forfeited this issue by failing to develop their argument properly. See *Sexton v. City of Chicago*, 2012 IL App (1st) 100010, ¶ 79; see also *People ex rel. Madigan v. Lincoln, Ltd.*, 383 Ill. App. 3d 198, 208 (2008) (holding that a party forfeited the argument for purposes of appeal where it "merely state[d] [a] proposition and [made] no attempt to support it with analysis or authority").

¶ 66                          Homeowner Workout Options

¶ 67          Defendants argue that the circuit court failed to offer them "owner protection, modification, workout options, and/or Mediation Program" as required by sections 15-1502.5 and 15-1401 of the Foreclosure Law (735 ILCS 5/15-1502.5, 15-1401 (West 2010)). This argument is manifestly erroneous. Neither of the cited statutes gives the court an obligation to do anything. The first statute requires lenders to send a "grace period notice" to certain borrowers before filing for foreclosure. 735 ILCS 5/15-1502.5 (West 2010). It applies only where the subject property is "residential" real estate as that term is defined in the Foreclosure Law. See 735 ILCS 5/15-1219 (West 2010). As we explained above, the Foreclosure Law defines "residential" property as property containing an actual borrower's residence–not merely a shed or a backyard. Therefore, Parkway was not required to send a grace period notice before foreclosing on this property, and section 15-1502.5 was not applicable.

¶ 68          The second cited statute, section 15-1401 of the Foreclosure Law, establishes a procedure whereby a borrower can resolve his foreclosure lawsuit by granting a deed to the property in lieu of foreclosure. 735 ILCS 5/15-1401 (West 2010). However, acceptance of such a deed is at the lender's sole option, and nothing in this record suggests that defendants offered such a deed.

¶ 69          Neither of the two cited statutes establishes any sort of program for loan modification or mediation of foreclosure disputes. Defendants were free to apply for such programs to the extent they existed in the general marketplace, or to file a motion asking the circuit court to refer the case for mediation under its own program. Those requests may have been futile, since most of the programs are limited to properties on which the mortgagor actually lives. However, having failed to do so, they cannot complain here that the court did not do so on its own.


¶ 70                              Deficiency Judgment

¶ 71          Defendants also attack the deficiency judgment and claim, without citing authority, that Parkway should absorb the remaining amount due on the note as a cost of doing business because at least one of the defendants is, allegedly, receiving food stamps and depending on benefits from a healthcare and family services office. The deficiency judgment stems from the court's confirmation of the sale. Under section 15-1508(b) of the Foreclosure Law (735 ILCS 5/15-1508(b) (West 2010)), the circuit court cannot refuse to confirm the sale once a judicial sale is actually held unless: (1) notice of the sale was not properly given; (2) the terms of the sale were unconscionable; (3) the sale was conducted fraudulently; or (4) "justice was otherwise not done." Defendants presented absolutely no evidence, such as an appraisal, that the property sold at an unconscionable price. "When there is no fraud or other irregularity in the foreclosure proceeding, the price at which the property is sold is the conclusive measure of its value." *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 35 (citing *Loeb v. Stern*, 198 Ill. 371, 383 (1902)); see also *NAB Bank*, 2013 IL App (1st) 121147, ¶ 20. The inability of the borrower to repay has no bearing on whether

the sale should be confirmed, and defendants have provided nothing suggesting that the sale price was unconscionable.

¶ 72                                   Judgment Obtained by Fraud

¶ 73    Defendants' final argument, contained in a single sentence, is that the judgments below are void based on Federal Rule of Civil Procedure 60(b)(3) (Fed. R. Civ. P. 60(b)(3)). The rule provides that judgments obtained by fraud, misrepresentation, or misconduct by an opposing party can be vacated. Because the federal rules of civil procedure apply only in federal courts, the rule does not provide a mechanism to vacate the orders at issue here. Even if we were to apply the applicable similar Illinois court rules, however, it would not change the result. As explained above, we find that the record does not demonstrate the judgment below was obtained through fraud, misrepresentation, or misconduct by Parkway.

¶ 74                                         Land Patent

¶ 75    The "argument" section of defendants' appellate brief incorporates arguments by reference which they made to the circuit court. The section begins: "Arguments have been submitted to the Circuit Court of Cook County, Illinois, on August 14, 2012, in a format of DEFENDANTS' REPLY TO PARKWAY BANK'S RESPONSE TO DEFENDANTS' MOTION TO RECONSIDER." No such document with that filing date is in the record. The record does contain a document with a very similar name, filed on May 4, 2012, and we believe that is the document referred to in the argument. Although not separately listed among the 15 points for appeal, the argument incorporates a document in the record which contains a variety of arguments relating to the "land patent." Additionally, defendants more specifically raise the land patent defense in their reply brief. For sake of completeness, and particularly because it relates to the sanctions we impose, we will briefly discuss defendants' land patent argument.

¶ 76    In *Wisconsin v. Glick*, 782 F.2d 670, 671-72 (7th Cir. 1986), the court began its opinion with the following summary of its view on land patents:

    "People saddled with mortgages may treasure the idea of having clean title to their homes. The usual way to obtain clean title is to pay one's debts. Some have decided that it is cheaper to write a 'land patent' purporting to convey unassailable title, and to file that 'patent' in the recording system. For example, Samuel Misenko, one of the appellants, drafted a 'declaration of land patent' purporting to clear the title to an acre of land of all encumbrances. He recorded that 'patent' with the appropriate officials of Manitowoc, Wisconsin. He attached to his 'patent' a genuine patent, to a quarter section of land, signed by President Fillmore in 1851.

    The theory of Misenko's new 'patent' is that because the original patent from the United States conveyed a clear title, no state may allow subsequent encumbrances on that title. The patent of 1851 grants title to 'Christian Bond and to his heirs and assigns forever.' Misenko apparently thinks that this standard conveyancers' language for creating a fee simple 'forever' bars all other interests in the land. We have held to the contrary that federal patents do not prevent the creation of later interests and have

-33-

nothing to do with claims subsequently arising under state law." *Id.* (citing *Hilgeford v. Peoples Bank*, 776 F.2d 176 (7th Cir. 1985)).

The *Glick* court held that the land patent arguments were frivolous, and awarded damages as a sanction under Federal Rule of Appellate Procedure 38 (Fed. R. App. P. 38), the counterpart to our Illinois Supreme Court Rule 375 (Ill. S. Ct. R. 375 (eff. Feb. 1, 1994)). *Glick*, 782 F.2d at 673-74.

¶ 77    Another court described land patents this way:

"It is, quite simply, an attempt to improve title by saying it is better. The court cannot conceive of a potentially more disruptive force in the world of property law than the ability of a person to get 'superior' title to land by simply filling out a document granting himself a 'land patent' and then filing it with the recorder of deeds. Such self-serving, gratuitous activity does not, cannot, and will not be sufficient by itself to create good title." (Emphasis omitted.) *Hilgeford v. Peoples Bank*, 607 F. Supp. 536, 538 (N.D. Ind. 1985).

¶ 78    Authority from this court similarly holds that one cannot make a mortgage disappear by filing a land patent. *Pathway Financial v. Beach*, 162 Ill. App. 3d 1036, 1039-40 (1987) (rejecting land patent defense in foreclosure case). Needless to say, the tactic is never successful, as it is not based in American law. See generally Bernard J. Sussman, *Idiot Legal Arguments: A Casebook for Dealing With Extremist Legal Arguments*, The Militia Watchdog (Aug. 29, 1999), http://archive.adl.org/mwd/suss1.asp (last visited Aug. 27, 2013). Accordingly, the land patent does nothing to protect defendants' interest in the subject real estate.

¶ 79                                    Sanctions

¶ 80    At the beginning of this opinion, we noted that we could have easily dismissed this appeal for multiple violations of court rules. However, we find the words of a distinguished presiding judge of the chancery division of the circuit court of Cook County, Judge Richard Curry, quite relevant here. Upon imposing sanctions in a frivolous lawsuit, Judge Curry said: " 'the proper response to malicious prosecution or careless lawyering is *not* to respond in-kind with slovenly preparation or half-hearted advocacy; *** but rather to validate our profession's righteous outrage and indignation over such conduct with meticulous research, careful analysis, expansive writing and aggressive advocacy.' " (Emphasis in original.) *Singer v. Brookman*, 217 Ill. App. 3d 870, 882 (1991) (quoting Judge Curry from the record below).

¶ 81    Although defendants papered the record with voluminous pleadings, nowhere do they actually deny that they had a valid loan secured by property they own, which they failed to pay, and which requires the property to be sold to pay the debt. Above, we have explained why virtually every one of their arguments is abjectly frivolous and/or presented in such a confusing manner, perhaps deliberately so, to make it as laborious as possible to resolve them. These tactics often appear in courts hearing debt cases, generated by defendants engaging in an organized program of filing frivolous pleadings, lawsuits, and claims in an effort to harass judges, creditors, and even court staff.

¶ 82    An Illinois law adopted in response to some of these tactics makes it a crime to record documents that cloud the title to property knowing that the theory upon which the purported cloud on title is based is not recognized as a legitimate legal theory by the courts of this State or of the United States. 720 ILCS 5/32-13 (West 2010). Our General Assembly recently amended that law to make unlawful clouding of title a Class 4 felony if the amount involved is over $10,000. See Pub. Act 98-98 (eff. Jan. 1, 2014) (amending 720 ILCS 5/32-13). The General Assembly also created an administrative process for persons to void fraudulent encumbrances on their property. The type of encumbrances listed include land patents. See Pub. Act 98-99, § 5 (eff. July 19, 2013) (enacting the new 55 ILCS 5/3-5010.5). When signing the bill, the Governor highlighted that the increased penalty would trigger the possibility of jail time for persons who record fraudulent documents. Illinois Government News Network, Governor Quinn Announces Major Progress Helping Families Stay in Their Homes Through Hardest Hit Program (July 19, 2013), *available at* http://www3.illinois.gov/PressReleases/ShowPressRelease.cfm?SubjectID=1&RecNum= 11365 (last visited Aug. 27, 2013). This background provides yet another predicate for the sanctions we discuss below.

¶ 83                              Attorney Fees for Appeal

¶ 84    The underlying mortgage and note contain standard fee-shifting provisions stating that the borrower must pay the lender's attorney fees in debt collection litigation. The court below awarded $6,373.90 in fees for work done up to and including the entry of the foreclosure order. When it confirmed the sale, the court awarded an additional $17,058.15 in attorney fees for work occasioned by the defendants' postforeclosure efforts to tie the case into knots by proffering land patents, subpoenas and related material. We hold that Parkway is entitled to additional fees for its work on this appeal, and direct it to file a fee petition within 14 days of the date of issuance of this opinion.

¶ 85    In the pages above, we set forth the background in unusual detail so as to establish a framework for our imposition of sanctions under Supreme Court Rule 375(b) (Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994)). This court is especially solicitous of self-represented parties who do not display punctilious compliance with our rules, particularly in cases where the issues are clear even though the brief is deficient. However, when the line is crossed, we have enforced our sanction rules. See *Kim v. Alvey, Inc.*, 322 Ill. App. 3d 657, 673-74 (2001) (invoking Rule 375(b) *sua sponte* and ordering appellant to show cause why a sanction should not be imposed on the ground that the appeal was frivolous); *Amadeo v. Gaynor*, 299 Ill. App. 3d 696, 705-06 (1998) (imposing Rule 375(b) sanctions because the appeal was not well grounded in fact or law and would not have been filed by a reasonable and prudent attorney); *First Federal Savings Bank of Proviso Township v. Drovers National Bank of Chicago*, 237 Ill. App. 3d 340, 346-47 (1992) (requiring debtors to show cause as to why sanctions under Rule 375(b) should not be imposed on the ground that the appeal was frivolous).

¶ 86    In addition to the facts above, we note the following additional facts which support our findings: (1) defendants obtained a fee waiver in the court below on the basis they had

-35-

insufficient funds to pay filing fees, but spent money to record lengthy documents which they then used as the basis for motions below and arguments here; (2) after defendants had already filed their own brief and Parkway had also filed its brief in this court, defendants filed a motion asking us to appoint an attorney for them, a request which was truly bizarre since the appointed *pro bono* attorney would have had the sorry task of taking on a case that defendants had already done their level best to sabotage; (3) while Parkway was, and will be, awarded its attorney fees, the award may be merely a Pyrrhic victory for it since defendants apparently have insufficient funds to pay them and might discharge them through bankruptcy; (4) they apparently chose to ignore the ample free legal resources available for them through the Cook County circuit court in favor of pursuing tactics which disregarded the legal system and were clearly intended to harass others; (5) defendants go to great lengths in their pleadings to impugn the integrity, intelligence, and impartiality of the able circuit judge,[8] accusations which are wholly unsupported by the record; (6) defendants devoted a large portion of their briefs in this court not to citation of applicable law or the record below, but to mentioning the name of one of Parkway's attorneys in the context of countless *ad feminam* attacks[9] on her; and (7) adding a fillip to frivolousness, they filed numerous pleadings in this court with an incorrect caption naming the attorney, in her personal capacity, as a party to the case. She is not, and never has been, a party to the case, and we have corrected the caption accordingly.

¶ 87    Supreme Court Rule 375 provides sanctions for frivolous appeals that are not taken in good faith. A reviewing court applies an objective standard to determine whether an appeal is frivolous; "the appeal is considered frivolous if it would not have been brought in good faith by a reasonable, prudent attorney." *Dreisilker Electric Motors, Inc. v. Rainbow Electric Corp.*, 203 Ill. App. 3d 304, 312 (1990). Sanctions may be awarded against *pro se* litigants under sufficiently egregious circumstances. *Wittekind v. Rusk*, 253 Ill. App. 3d 577, 581 (1993); see also *Sterling Homes, Ltd. v. Raspberry*, 325 Ill. App. 3d 703, 709 (2001) (invoking Rule 375 to impose sanctions upon *pro se* defendants). The imposition of Rule 375 sanctions is left entirely to the discretion of the reviewing court. *Kheirkhahvash v. Baniassadi*, 407 Ill. App. 3d 171, 182 (2011). We constantly remind attorneys that they should maintain civility even though they must act as zealous advocates. See *Talamine v. Apartment Finders, Inc.*, 2013 IL App (1st) 121201, ¶¶ 9-12. Zealous advocacy, however, must not deteriorate into zealotry, regardless of whether the advocate is a lawyer or a self-represented litigant.

¶ 88    We find that this appeal, viewed as a whole, was frivolous, that it was taken for an improper purpose, and that it was filed specifically to harass and to cause unnecessary delay and needlessly increase the cost of litigation. We choose to impose sanctions for this

---

[8]At the very end of the case, Parkway asked the circuit judge to impose sanctions on defendants. The judge did not do so, and Parkway has not cross-appealed from that ruling.

[9]One example is found in the reply brief, where defendants indicate that the attorney is a "proven, notorious, and misleading deceiver," and advise us that they will be "happy to elaborate on that aspect, upon request." We decline the invitation.

conduct, finding that cases like this drain valuable resources intended to benefit those who accept the social contract of living under a law-based system of government.

¶ 89 We then turn to what sanction is appropriate. Supreme Court Rule 375(a) deals with failure to follow appellate rules and specifically allows "an order to pay a fine, where appropriate, may also be ordered against any party." Ill. S. Ct. R. 375(a) (eff. Feb. 1, 1994). Rule 375(b), which addresses frivolous appeals, does not specifically mention fines as a possible penalty. It states: "Appropriate sanctions for violations of this section *may* include an order to pay to the other party or parties damages, the reasonable costs of the appeal or other action, and any other expenses necessarily incurred by the filing of the appeal or other action, including reasonable attorney fees." (Emphasis added.) Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). The committee comments to the rule make it clear, however, that the penalties for violation of Rule 375(b) may also include a fine: "Under paragraph (b), a penal fine may be imposed if the conduct in a particular case also constitutes a violation of the civil appeals rules as set forth in paragraph (a) above." Ill. S. Ct. R. 375(b), Committee Comments (Aug. 1, 1989).

¶ 90 The committee comments also note that Rule 375 is based on federal appellate rules which themselves have been interpreted as allowing federal courts to impose fines for frivolous appeals. See, *e.g.*, *Glick*, 782 F.2d at 673-74 (imposing "damages" as sanction for sovereign citizen land patent appeal). The committee comments also note: "Moreover, appeals courts have been recognized to have inherent authority to impose sanctions for taking a frivolous appeal or for abusive tactics in the conduct of the appeal," citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980), in support. Ill. S. Ct. R. 375(b), Committee Comments (Aug. 1, 1989).

¶ 91 One court dealing with a similar problem noted that computing the penalty is an art, not a science, but that the penalty should reflect, among other things, the "indirect costs of this litigation–including the costs that befall serious litigants, who must wait longer for their cases to receive judicial attention. *** There should be no weeping over this imprecision, however. [Defendants] could have avoided the penalty, and other people *should* avoid it, by the most minimal concern for settled rules. They knew or should have known that their claims are frivolous, and they (rather than their adversary) must pay the cost of their self-indulgent litigation." (Emphasis in original.) *Coleman v. Commissioner of Internal Revenue*, 791 F.2d 68, 73 (7th Cir. 1986).

¶ 92 The tactics employed by defendants in this case caused the expenditure of significant time and resources not only by the court below, but by the judges, law clerks, librarians, and clerk's office of this court. By imposing a fine in this case, we seek not only to deter similar conduct by future litigants, but to provide some measure of compensation for the public fisc for that needless expenditure. The complexity of our court system makes it impossible to assess the cost, down to the penny, of adjudicating this appeal. The court below determined the reasonable attorney fees for the case below were $23,432.05. The fees for the appeal may or may not be in the same range. Parkway's fees provide a valid starting point for the computation of a fine in this case. See, *e.g.*, *Szopa v. United States*, 460 F.3d 884, 886-87

(7th Cir. 2006).[10] Mindful that we should not assess fines so great that they would chill possibly meritorious litigation, we believe a fine of $10,000 is likely appropriate in this case. The fine, which will not be dischargeable in bankruptcy (see 11 U.S.C. § 523(a)(7) (2006)), is high enough that it will discourage future tactics in debt collection cases, and punish defendants for their conduct in litigating this case in the manner they have.

¶ 93    The rule provides that: "If the reviewing court initiates the sanction, it shall require the party or attorney, or both, to show cause why such a sanction should not be imposed before imposing the sanction." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). Accordingly, we issue a rule to show cause why we should not impose a sanction of $10,000 pursuant to Supreme Court Rule 375(a) and (b) on defendants, jointly and severally. See *Kim*, 322 Ill. App. 3d at 673-74; *Amadeo*, 299 Ill. App. 3d at 705-06; *First Federal Savings Bank of Proviso Township*, 237 Ill. App. 3d at 346-47.

¶ 94    If defendants have pressed some other issues upon us in their somewhat disorganized presentation, we have reviewed them and find them to be meritless.

¶ 95                          CONCLUSION

¶ 96    We affirm the judgments of the circuit court of Cook County. The underlying documents provide that the lender is entitled to its attorney fees in case of a successful appeal. We also direct defendants to show cause why we should not impose a fine on them, jointly and severally, under Illinois Supreme Court Rule 375 in an amount of $10,000. We have issued a separate order setting a briefing schedule on any petition for attorney fees and on the rule to show cause. We will issue a supplement to this opinion upon review of the materials submitted regarding the fee petition and rule to show cause.

¶ 97    Affirmed.

¶ 98                    SUPPLEMENT TO OPINION

¶ 99    This supplement resolves the two issues left open in our September 23, 2013 opinion: (1) the attorney fees for the appeal; and (2) the rule to show cause. Parkway Bank filed a

---

[10]Unlike defendants here, the offending party in *Szopa* did not sign a fee-shifting agreement. The opposing side was the United States government, so awarding fees as to the government created the same result as imposing a fine payable to the government. *Szopa*, 460 F.3d at 887. Here the opposing side is a private party which already benefits from a fee-shifting agreement, so awarding Parkway attorney fees as a sanction adds nothing to what is already routinely granted and therefore has no deterrent effect. Along this line, a commentator noted that our local federal appellate court imposes most of its sanctions on two groups: "public fanatics and private fanatics. The public fanatics include such crusaders as tax protesters *and a group that concocts bogus land titles*. The court has been resorting to fixed fines for such litigation, in order to save the government the trouble of calculating its attorneys fees for opposing them." (Emphasis added.) Linda R. Hirshman, *Foreword: Tough Love: The Court of Appeals Runs the Seventh Circuit the Old Fashioned Way*, 63 Chi.-Kent L. Rev. 191, 201 (1987).

petition for attorney fees in the amount of $23,432.05, and defendants have filed no response to it. We agree with the circuit court and find the fees to be reasonable. We grant the petition for attorney fees.

¶ 100    Defendants have retained counsel who has filed a response to the rule to show cause. The response, which contains no supporting affidavit, presents two basic arguments. First, defendants suggest that because the matter took no longer to resolve than is normally the case, they should not be penalized for causing undue delay. Second, they candidly acknowledge that: (1) their brief was "totally and completely not in compliance with Supreme Court Rule 341"; (2) "[i]n retrospect, [they] do not know how this Court, yet alone the plaintiffs [*sic*], were able to determine the issues presented"; (3) other than the issue regarding the production of the original note, all other matters presented in the "Issues Presented for Review" were "inane and nonsensical"; (4) the inflammatory language in their brief was "unnecessary"; and (5) "[i]n retrospect, they should not have filed this inane garbage." Despite these admissions, they contend that sanctions are not warranted because their most disruptive tactics were used at the circuit court level, and the circuit court declined to grant sanctions.

¶ 101    The court appreciates that defendants now understand that their actions before this court were improper. However, as the opinion makes clear, this is not a case where self-represented litigants were "in over their head" and were helpless to find their way through what seemed to be a dizzying maze of court rules. There were ample legitimate resources available to defendants, and they chose not to use them but, instead, to use some still-unrevealed source dedicated to promoting litigation tactics intended only to harass creditors, judges, and court staffs. That being the case, cause has not been shown why we should not impose sanctions. *Cf. Talamine*, 2013 IL App (1st) 121201, ¶¶ 9-12. However, based on defendants' representations, we reduce the sanction to $5,000.

¶ 102    Under the authority granted by Illinois Supreme Court Rule 375 (Ill. S. Ct. R. 375 (eff. Feb. 1, 1994)), we increase the $50,958.09 money judgment previously entered in favor of Parkway Bank by $23,432.05, with interest to accrue thereon as provided by law.

¶ 103    Defendants shall have 30 days from the deadline to file a petition for leave to appeal in the supreme court to pay the $5,000 sanction. If defendants file a petition for leave to appeal in the supreme court, defendants shall have 30 days to pay the $5,000 sanction from the date the supreme court denies the petition for leave to appeal, if said petition is denied. If the supreme court grants defendants' petition for leave to appeal, payment of the $5,000 sanction is stayed until resolution of the case by the supreme court. If the sanction remains unpaid, we will enter a judgment order against defendants, jointly and severally, in favor of the appellate court clerk, for deposit in the State of Illinois general revenue fund, in the amount of $5,000, and will direct the clerk, through the Attorney General, to record that judgment in Cook and McHenry Counties. The deadline to file a petition for rehearing is 21 days from the filing date of this supplemental opinion.